**NOT FOR PUBLICATION**

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
                                     :
DONALD STILTON,                      :
                                     :
          Plaintiff,                 : Civil Action No. 07-3008 (MLC)
                                     :
     v.                              :    MEMORANDUM OPINION
                                     :
OCEAN COUNTY COURTHOUSE, et al.,     :
                                     :
          Defendants.                :
                                     :
```

**APPEARANCES:**

Donald Stilton, Pro Se, Inmate No. 548955
South Woods State Prison, Bridgeton, NJ

**COOPER, District Judge**

Plaintiff seeks to bring this action in forma pauperis, without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on his affidavit of indigence and prison account statement, the Court will grant his application and order the Clerk of the Court to file the complaint ("Complaint"). The Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The Court will dismiss the Complaint.

## BACKGROUND

The facts are taken from the complaint and assumed true here. Plaintiff is an inmate imprisoned at South Woods State Prison. He contends that his civil rights are being violated by

his inability to have visits with his minor daughter Brianna Pesce ("Brianna") or to obtain information about Brianna from Brianna's mother, Janet Ann Pesce ("Janet Ann").

Plaintiff and Janet Ann, who were never married, are the biological parents of Brianna; Janet Ann has full custody of Brianna. (See Compl., ¶¶ 17-19.) Janet Ann sought a restraining order against Plaintiff right after Brianna's birth; such order was issued when Brianna was less than three-months old, and prohibited visitation between Brianna and Plaintiff. (See id., ¶¶ 18-20.)[1] Later issued orders (1) directed Janet Ann to provide Plaintiff's mother with information about Brianna's health, safety and welfare, as well as with photographs of Brianna, to forward to Plaintiff, and (2) allowed him to send gifts, letters and pictures to Eve Holt, a probation counselor ("Holt"), for offering these items to Janet Ann (for Janet Ann's discretionary forwarding of these items to Brianna). (See id., ¶¶ 27-32.)

Starting about one year after Plaintiff was released from his previous incarceration, he was allowed several supervised visits with Brianna at a courthouse, with the last visit taking

---

[1] It appears that Brianna was born when Plaintiff was serving a previous prison term. An amended restraining order, issued when Brianna was about one-year old, clarified that Plaintiff was prohibited from visitation with Brianna until he would be released from incarceration but directed supervised visitation upon his release.

place on April 22, 2002.  (See id., ¶¶ 39-40.)[2]  Therese A'Hearn, a probation officer ("A'Hearn"), supervised the visits.[3]

After being incarcerated under his current conviction, Plaintiff received only one photograph of Brianna and one letter with information about her from Janet Ann, and thus moved in state court to vacate the restraining order; the motion was denied.  (See id., ¶¶ 62-67, 71.)[4]  In response, he filed in state court his currently pending "motion for various relief relating to establishing contacts" Brianna.  (Id., ¶¶ 68-69.)

The Complaint names Janet Ann, Orton, Holt, A'Hearn and Rotunno as Defendants.  He also names as Defendants: (1) Ocean County Courthouse and Brendon Toner ("Toner"), the manager of the

---

[2] According to the Complaint, Janet Ann "told Brianna not to listen to [Plaintiff] during these visits, told her to hit him, told not to call him dad, not to accept gifts from him, told her that he put a knife to [Janet Ann's] throat [in order] to sabotage the relationship" between him and Brianna.  (Compl., ¶ 45.)

[3] The last supervised visit was cancelled because Plaintiff went to use the bathroom during the time when his name was called, and A'Hearn cancelled the visit presuming that he was absent.  (See Compl., ¶ 40.)  He complained about the cancellation to Tom Rotunno, A'Hearn's supervisor ("Rotunno").  (Id., ¶ 41.)  A'Hearn wrote a report recommending against future visits, and the visits were then terminated.  (See id., ¶¶ 42-43.)  A later-issued order prohibited Plaintiff from any contact with Brianna until she reached thirteen, but allowed him to send cards and gifts for her birthday and holidays, as well as two thirty-minute videotapes of himself per year, provided that such cards and videotapes would be pre-screened by a mental health professional.  (See id., ¶¶ 58-60.)

[4] The Complaint does not specify when Plaintiff was arrested and convicted on the basis of charges underlying his current incarceration.  He apparently entered into the custody of the New Jersey Department of Corrections on March 24, 2006.

3

state court "Family Division"; (2) Victoria Rehrer ("Rehrer") and Alan Cornblatt ("Cornblatt"), attorneys representing Janet Ann in various family law proceedings; (3) Doctor Mark White ("White") retained by Janet Ann for evaluation of Brianna's psychological suitability for visits with Plaintiff; (4) Doctor Ralph Fretz ("Fretz") retained by Janet Ann for psychological evaluation of Plaintiff; and (5) Steven Willis and David Schlendorf, Brianna's guardians ad litem.[5]

Plaintiff asserts that Janet Ann violated his civil rights by "deny[ing] access to information about Brianna [and not] provid[ing] updated photos" of Brianna. (Id., ¶ 89.) He also alleges that Orton, Toner, Holt, A'Hearn and Rotunno violated his rights by failing to file motions — or advise him about the progress of his currently pending motion — to establish contact between him and Brianna. (See id., ¶¶ 68-69, 90-91.) Also, Plaintiff maintains that attorneys Rehrer and Cornblatt violated his rights by representing Janet Ann during legal proceedings, while White and Fretz violated his rights by preparing reports (eventually used by family courts holding visitation rights hearings) recommending against Plaintiff's visits with Brianna. (See id., ¶¶ 49-50.) Finally, he maintains that Willis and Schlendorf violated Brianna's rights by not insisting that

---

[5] Although the Courthouse is named as a Defendant, the Complaint contains no allegations against the Courthouse.

4

Brianna has a relationship with Plaintiff. (See id., ¶¶ 85-86.) He asks for monetary, injunctive and declaratory relief.

## DISCUSSION

### A. Standard of Review

A court must dismiss, at the earliest practicable time, a prisoner action that is frivolous or malicious, fails to state a claim, or seeks monetary relief from immune defendants. See 28 U.S.C. § 1915A(b). The Court must construe a complaint liberally in the plaintiff's favor when determining its sufficiency. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). But the Court need not lend credit to a plaintiff's "bald assertions" or "legal conclusions." Id.

### B. 42 U.S.C. § 1983

To establish a violation of 42 U.S.C. § 1983, a plaintiff must show that the challenged conduct (1) was committed by a person acting under color of state law, and (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pa., 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.    Claims Against Janet Ann, Rehrer, Cornblatt, White and Fretz**

Plaintiff's claims against Janet Ann, her attorneys Rehrer and Cornblatt, and doctors White and Fretz fail to meet the acting-under-color-of-law requirement for a claim under Section 1983.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.

Janet Ann is a private actor.  The lawyers who represented her during various family law proceedings are also private actors; Plaintiff has pleaded no facts showing they acted in any capacity other than that of traditional attorneys.  An attorney, whether court-appointed or privately retained, does not act under color of law when representing clients in a legal capacity.  See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding public defender not acting under color of state law); Steward v. Meeker, 459 F.2d 669 (3d Cir. 1972) (privately-retained counsel not acting under color of state law when representing client); Thomas v. Howard, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney not acting under color of state law).  White and Fretz also do not qualify as state actors for the purposes of § 1983, regardless of Plaintiff's claim that the reports they produced for Janet Ann's submission to state courts were false.  See Briscoe v. LaHue, 460 U.S. 325, 329-30 (1983) ("It is beyond question that, when a

6

private party gives testimony in open court . . . , that act is not performed 'under color of law' as is required for recovery under § 1983"). Because Plaintiff's allegations fail to indicate that Defendants Janet Ann, Rehrer, Cornblatt, White and Fretz acted under color of law, these allegations will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**D.   Claims Against Orton, Toner, Holt, A'Hearn and Rotunno**

Plaintiff's claims against Orton, Toner, Holt, A'Hearn and Rotunno will also be dismissed. The Court construes his allegations, that these Defendants failed to establish contact between him and Brianna, as a claim that these Defendants somehow caused issuance of — or failed to challenge — the currently existing restraining orders preventing contact with Brianna. The claim is barred by the Rooker-Feldman doctrine.[6]

---

[6] The Court could alternatively construe the allegations as a claim that these Defendants failed to assist Plaintiff's enforcement of those parts of the restraining orders that directed Janet Ann to provide Plaintiff's mother with updated information and photographs, or to inform Plaintiff about the calendar status of his pending motions. If so, the Complaint fails to allege that the conduct of these Defendants deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. No federal provision obligates a court's case manager, a probation officer, or a social counselor to assist a client in enforcement of the client's parental rights ensuing from orders issued by a family court or to report the status of the court's motion calendar to a litigant. Finally, if the Court is to construe the allegations as a claim that these Defendants are failing to perform the duties that squarely fall within their job descriptions, e.g., to place Plaintiff's motions on the court's docket, Plaintiff's application cannot be

A party who loses in state court may not bring an action in federal court, complaining of injuries caused by the state court judgment.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. of Apps. v. Feldman, 460 U.S. 462 (1983).  Also, a district court may not "entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably intertwined' with the state court's judgment." Exxon, 544 U.S. at 286 n.1 (quoting Feldman, 460 U.S. at 482 n.16.) A claim is "inextricably intertwined" with a state court judgment if it requires the court to determine "that the state court judgment was erroneously entered in order to grant the requested relief."  Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004).

Plaintiff's substantive due process claims can only be understood as claims resulting from the state court orders that denied him visitation with, or custody of, Brianna.  See Bangura v. City of Phila., 2007 U.S. Dist. LEXIS 76270, at *12-13 (E.D. Pa. Oct. 12, 2007) (examining analogous scenario).  But Plaintiff would only be entitled to damages flowing from those orders if those orders were erroneous.  See id. at *13.  Thus, these claims

---

entertained as a § 1983 action since the relief he seeks is a writ of mandamus.  See Cheney v. U.S. Dist. Ct., 542 U.S. 367, 392 (2004) (stating mandamus available to plaintiff if defendant owes him clear, non-discretionary duty).

are barred by the Rooker-Feldman doctrine.  See id. (citing Ludwig v. Berks County, 2007 U.S. Dist. LEXIS 63214, at *2 (E.D. Pa. Aug. 28, 2007) (finding doctrine barred review of claim seeking damages arising from adverse custody ruling)).  Since Plaintiff improperly uses his § 1983 Complaint as a vehicle to assert damages resulting from state court orders in this Court, or to enforce (or to speed up the enforcement of) those orders through this Court, his claims against Orton, Toner, Holt, A'Hearn and Rotunno will be dismissed.

**E.   Claims Against Willis and Schlendorf**

Plaintiff lacks standing to bring claims on behalf of Brianna against Willis and Schlendorf.  Under the "next friend" doctrine, a third person has standing to file and pursue a claim in court on behalf of someone who is unable to do so on his or her own, or through one's legal guardian.  See Whitmore v. Arkansas, 495 U.S. 149, 161-62 (1990).  To qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action."  Id. at 163-64.  The burden is on the "next friend" to justify this status.  See id. at 164.

This Court will not recognize Plaintiff as Brianna's "next friend."  Even if this Court presumes that Plaintiff's

relationship with Brianna is such that Plaintiff is dedicated to her best interests, accord Gilmore v. Utah, 429 U.S. 1012, 1013-14 (1976) (recognizing "next friend" standing of mother on behalf of prisoner); Evans v. Bennett, 440 U.S. 1301, 1304 (1979) (same), the Court has no basis to presume that Janet Ann, Brianna's custodial parent, suffers from mental incompetence or another disability preventing her from instituting an action against Willis and Schlendorf in the event they fail to perform their responsibilities as Brianna's guardians ad litem.[7] Therefore, Plaintiff's claims raised on behalf of Brianna against Willis and Schlendorf will be dismissed for lack of standing.

## CONCLUSION

The Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The Court will issue an appropriate order and judgment.[8]

                                                    s/ Mary L. Cooper
                                          **MARY L. COOPER**
                                          United States District Judge

Dated: November 29, 2007

---

[7] Even if the Court is to hypothesize that Plaintiff has standing to raise claims for Brianna, these claims are still invalid since they assert a purely speculative injury, i.e., mere conjecture that Brianna desires but is deprived of a relationship with her father.

[8] The Plaintiff refers to state law.  (See Compl., ¶ 104.) But the Plaintiff appears to assert that the defendants violated federal law by failing to follow state law.  Thus, the Court will not construe the complaint as containing state law claims that should be dismissed without prejudice.  See 28 U.S.C. § 1367(c).